UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PRACTICE MANAGEMENT SUPPORT SERVICES, INC., an Illinois corporation, individual and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | No. 14 C 2032 |
| PLAINTIFF, | ) ) | |
| v. | ) ) | Judge Thomas M. Durkin |
| CIRQUE DU SOLEIL INC., CIRQUE DU SOLEIL (US), INC. AND JOHN DOES 1-10, | ) ) ) | |
| DEFENDANTS. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This is a class action lawsuit brought by Plaintiff Practice Management Support Services, Inc. ("Plaintiff" or "Practice Management") on behalf of itself and all others similarly situated. R. 1. It seeks damages from Defendants Cirque du Soleil, Inc., Cirque du Soleil (US), Inc., and other as yet unnamed Cirque du Soleil entities (collectively, "Defendants" or the "Cirque Defendants") arising from an allegedly unsolicited facsimile transmitted on July 7, 2009 advertising the show "A New Twist on Vaudville" at the Chicago Theater. *Id.* Practice Management claims the advertisement was a "junk fax," sent by Defendants in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *Id.* at ¶¶ 20-33. Defendants move this Court for summary judgment, R. 46, arguing that Plaintiff's claim is time-barred by the four-year statute of limitations, 28 U.S.C. § 1658(a), and

1

not subject to the "doctrine of equitable tolling." R. 48. For the following reasons, Defendants' motion is denied.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment may properly be entered on the basis of a statute of limitations defense if "(1) the statute of limitations has run, thereby barring the plaintiff's claim as a matter of law, and (2) there exist no genuine issues of material fact regarding the time at which plaintiff's claim has accrued and the application of the statute to plaintiff's claim which may be resolved in plaintiff's favor." *Massey v. United States*, 312 F.3d 272, 276 (7th Cir. 2002) (internal quotations omitted).

## Background

The facts relevant to this motion are not in dispute. Indeed, they are a matter of public record, chronicled in the dockets of two earlier class actions arising from the same July 7, 2009 fax at issue here. Both suits were brought by a different putative class representative, GM Sign, Inc. (collectively, the "GM Sign Actions") and both assert an identical TCPA claim to the one in this case. Plaintiff argues that the GM Sign Actions toll the four-year statute of limitations on its claim in this Court. Defendant, for a variety of reasons set forth below, disagrees that tolling is proper in this case. Because the tangled procedural history of the GM Sign Actions is relevant to resolving this dispute, the Court recounts it here.

On August 27, 2009, the first class action lawsuit was filed in Illinois state court by GM Sign against Groupe Cirque du Soleil, Inc. R. 55-1. The case was removed to federal court on December 10, 2009. *GM Sign, Inc. v. Groupe Cirque du Soleil, Inc., et al.,* No. 09-CV-7692, R. 1-1 (N.D. Ill.) ("First Federal Action"). In addition to Groupe Cirque du Soleil, Inc., the First Federal Action named Cirque to Soleil America, Inc. and unnamed Cirque entities ("John Does 1-10"), as defendants.

On March 18, 2011, class discovery closed in the First Federal Action. *Id.* R. 35. Three days later, GM Sign moved for an extension of time to complete discovery and to reopen the period within which to amend the pleadings and add additional parties. *Id.* R. 41. The motion was denied in its entirety on April 19, 2011. *Id.* R. 48.

On April 18, 2011, GM Sign filed a second action in state court on behalf of the same class and against Cirque du Soleil, Inc., Cirque du Soleil (US), Inc. and

unnamed Cirque entities, the same defendants named in this matter.[1] *GM Sign, Inc. v. Cirque du Soleil*, No. 11-CH-1894 (Cir. Ct. Lake Cnty.) ("State Action"). The defendants moved to dismiss the State Action on the basis that it was duplicative of the First Federal Action on July 1, 2011. R. 47-8 at 1 ("This same plaintiff has alleged the same cause of action against essentially the same defendants in two separate venues in direct contravention of 735 ILCS 5/2-619(a)(3)."). The state court requested additional briefing by the defendants regarding the relationship between the Cirque entities named in the First Federal Action and the Cirque entities named in the State Action. *See* R. 47-9 at 5, 43. The defendants later submitted an affidavit attesting "that the state defendants are wholly-owned subsidiaries of one of the federal defendants," and re-briefed the motion to dismiss. *Id.* at 4, 44.

Meanwhile, in the First Federal Action, the case proceeded toward a determination of class certification. *See GM Sign*, No. 09-CV-7692 Rs. 53, 61. On August 29, 2011, more than five months after the close of discovery, GM Sign moved to compel various documents it claimed were relevant to establishing certification requirements. *See id.* R. 68. On December 5, 2011, Judge Valdez denied that motion for, among other reasons, inexcusable delay. *Id.* R. 86.

Before the issue of class certification was decided (but after briefing was well underway, *see id.* Rs. 77, 80, 83, 89), GM Sign moved to dismiss the First Federal Action without prejudice on January 31, 2012. *Id.* R. 92. In its moving papers, GM

---

[1] GM Sign also named Cirque du Soleil as a defendant in the State Action. Cirque du Soleil is a registered trade name, not a legal entity, and was dismissed from the case on that basis. *See* 47-14 at 3 n. 2.

4

Sign explained that since "the Court has denied [GM Sign] the ability to add any other of the "Cirque" entities as additional Defendants in this case . . . [GM Sign] believes that the interest of the Class and of justice would be best served by pursuing liability against the defendants named in the state court action." *Id.* On February 15, 2012, Judge Valdez granted the motion conditioned on GM Sign's payment of the defendant's fees and costs. *Id.* at R. 94.

The following week, on February 23, 2012, the defendants in the State Action withdrew their still-pending amended motion to dismiss. R. 55-5. Discovery deadlines were set accordingly. *Id.*

Back in federal court, on March 28, 2012, after the defendants had filed their fee petition in the First Federal Action, GM Sign moved to convert the conditional dismissal without prejudice to an unconditional dismissal with prejudice. *Id.* at R. 99. That motion was granted and the case was dismissed with prejudice on April 4, 2012. *Id.* at R. 104.

Discovery continued in the State Action for more than a year. *See* R. 47-14 at 4 n. 3. On August 23, 2013, Defendants moved for summary judgement, arguing that the dismissal with prejudice in the First Federal Action had a *res judicata* effect, barring subsequent proceedings between the parties or their privies on the same cause of action. *Id.* The state court judge denied the motion with leave to refile on the basis that more evidence was needed about the relationship between the federal and state Cirque defendants. *Id.* Additional discovery was conducted on the topic. *Id.* On January 13, 2014, the defendants filed an amended motion for

5

summary judgment supported by deposition and documentary evidence that the federal and state Cirque defendants "all have the same managers/directors and officers." *Id*. at 4, 128-46, 181-205. The motion was granted on March 20, 2014, the state court judge having found "that there is no genuine issue of material fact as to whether the defendants in the Lake County action [ ] are privies of the defendants in the federal court action . . . [for] the purposes of *res judicata*." R. 47-16 at 20-21. The case was dismissed.

This instant action was filed the next day by Practice Management. R. 1.

**Discussion**

Defendants contend that the four-year statute of limitations on TCPA claims has run as to the July 7, 2009 fax. R. 48. In opposition, Plaintiff argues that the GM Sign Actions (either or both) toll the statute of limitations based on the Seventh Circuit's reasoning in *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560 (7th Cir. 2011). R. 54. Defendants argue that *Sawyer* is inapplicable. R. 48; R. 60. The Court agrees with Plaintiff.

A.  Controlling Case Law

In *American Pipe & Construction. Co. v. Utah*, the Supreme Court held that the timely filing of a class action complaint commences suit and tolls the statute of limitations for all members of the putative class. 414 U.S. 538, 554 (1983). Under the clear rule in *American Pipe*, tolling continues until a court decides that a suit is not appropriate for class action treatment. *Id*. at 553. Setting forth the rationale for the rule, the Supreme Court explained:

> [Any contrary rule] would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment . . . would be to file [ ] individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid.

*Id.* at 551. In other words, to affect the purpose of Rule 23, class members must be able to rely on the existence of a previously filed class complaint to protect their rights. *Id.*; *accord Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 352-53 (1983) (noting that "Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims").

As the Supreme Court explained, "This [tolling] rule is in no way inconsistent with the functional operation of a statute of limitations." *Id.* at 554. Statutes of limitations are designed to "prevent[ ] surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded and witnesses have disappeared." *Id.* at 554 (internal quotations omitted). They are premised on the theory that even if one has a just claim, it is unjust not to put the adversary on notice before the claim becomes stale. *Id.* But when a plaintiff purporting to represent a class commences a suit, "he notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.* at 555. Accordingly, in the context of timely-filed class actions, the imposition of a time bar may not be necessary to promote the purposes of statutes of limitations. *Id.*

The Seventh Circuit recently had occasion to consider *American Pipe* tolling in the context of a TCPA claim. *See Sawyer*, 642 F.3d 560 (2011). In *Sawyer*, as

here, the plaintiff against whom summary judgment was sought was not the first to file a junk fax claim for the receipt of a particular uninvited advertisement. Indeed, Mr. Sawyer's class suit followed closely on the heels of a predecessor class action brought by plaintiff Park Bank for damages arising from the same December 2005 fax. *Id.* at 561. Park Bank filed its claim with six months left on the four year statute of limitations. Before a decision had been made on class certification, but more than four years after the fax at issue was sent, Park Bank "threw in the towel," withdrawing from the case and leaving the other fax recipients "in the lurch." *Id.* at 561-62.

After unsuccessfully moving to intervene in the original action, Mr. Sawyer, represented by the same attorneys as Park Bank,[2] filed a new suit within days of the Park Bank dismissal, alleging the same claims on behalf of the same class. *Id.* at 561. The defendant moved to dismiss on the basis that the statute of limitations had run on Mr. Sawyer's claims. *Id.* The district court denied the motion, holding that the limitations period was tolled by Park Bank's suit for as long as it was pending. 731 F. Supp. 2d 850, 853 (E.D. Wis. 2010).

Affirming, Judge Easterbrook set forth the broad rule of the Seventh Circuit:

> [I]t does not matter, under federal law, whether the first suit's status as a would-be class action ends by choice of the plaintiff (who may abandon the quest to represent a class or, as Park Bank did, bow out altogether) or by choice of the judge . . . Tolling lasts from the day a class claim is asserted until the day the suit is conclusively not a class action—which may be because the judge rules adversely to the

---

[2] Park Bank and Mr. Sawyer were represented by the law firm of Anderson + Wanca, the same firm representing GM Sign and Practice Management.

8

> plaintiff, or because the plaintiff reads the handwriting on the wall and decides not to throw good money after bad.

*Sawyer*, 642 F.3d at 563.

B.  <u>Limits on *American Pipe* Tolling</u>

The tolling rule is not absolute; courts have recognized its potential for abuse. In his concurrence in *American Pipe*, Justice Blackman cautioned that the tolling rule "must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights." 414 U.S. at 561. Similarly, Justice Powell cautioned that "[i]t is important to make certain [ ] that *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit." *Crown, Cork & Seal*, 462 U.S. at 355 (Powell, J., joined by Rehnquist, J. and O'Connor, J., concurring). To that end, he instructed district courts to "take care to ensure that [any subsequent] suit raises claims that concern the same evidence, memories, and witnesses as the subject matter of the original suit so that the defendant will not be prejudiced." *Id.*

Seizing on this cautionary language, Defendants catalogue a series of inequities, which, in their view, prohibit application of the tolling doctrine and require dismissal of this suit. R. 48 at 11-12. They argue that because the Seventh Circuit did not have occasion to consider such inequities in *Sawyer*, the ruling in that case does not apply. *Id.* at 15; R. 60 at 8.

Specifically, Defendants argue that dismissing the First Federal Action was simply a tactical maneuver by Plaintiff's counsel "to circumvent court orders and

9

avoid the consequences of their own mistakes." *Id.* at 6. They point to GM Sign's admission that it was electing to pursue its claims exclusively in state court because Judge Valdez had denied GM Sign's untimely motion to reopen the period to add defendant parties. R. 48 at 12. They argue that "[c]ounsel should not be allowed to rely on tolling to forum shop and judge shop," dismissing one case before class certification is determined in order to conduct discovery it failed to press in an earlier suit. R. 48 at 6-7.

Contrary to Defendants' position, *Sawyer* anticipates these arguments, holding that a named plaintiff's motivation for abandoning suit cannot impact the claims of his fellow class members:

> "The [*American Pipe*] Court's goal of enabling members of a putative class to rely on a pending action to protect their interests can be achieved only if the way in which the first suit ends—denial of class certification by the judge, abandonment by the plaintiff, or any other fashion—is irrelevant."

*Sawyer*, 642 F.3d at 562. Defendants' arguments therefore fail.[3]

Defendants direct the Court to a number of cases declining to apply the *American Pipe* tolling doctrine where doing so would be inequitable. None of those cases holds that conduct of the type described here precludes application of the tolling rule. *See, e.g., Hunter v. American General Life & Acc. Ins. Co.*, 384 F. Supp. 2d 888, 893-94 (D.S.C. 2005) (*American Pipe* tolling does not permit a second class action where the class definition in an earlier action had been narrowed for

---

[3] While not relevant to this Court's determination of the tolling issue, Defendants' allegations regarding counsel's conduct in the GM Sign Actions may be considered by this Court for the purposes of appointing class counsel under Rule 23(g).

purposes of settlement negotiations); *In re Westinghouse Securities Litigation*, 982 F. Supp. 1031, 1035 (W.D. Pa. 1997) (*American Pipe* tolling does not permit a new plaintiff to re-litigate claims voluntarily abandoned or dismissed on the merits in a previous action); *In re Crazy Eddie Sec. Litig.*, 747 F.Supp. 850, 856 (E.D.N.Y.1990) (declining to extend *American Pipe* tolling to a "placeholder suit" where the original plaintiff lacked standing). Unlike the cases Defendants cite, in this case no claims have been abandoned in favor of settlement, no substantive issues have been decided (including class certification), and there is no evidence that either of the GM Sign Actions were frivolously filed to toll time.[4] In other words, this case does not involve the type of abuse that removes it from the purview of *Sawyer*.

Finally, Defendant argues that tolling "would prevent the speedy and efficient resolution of legal disputes[ ] as contemplated by the Federal Rules of Civil Procedure." R. 48 at 12. To quote Judge Easterbrook, "We don't disparage the value of swift dispute resolution, but that goal is not a reason to disregard Rule 23." *Sawyer*, 642 F.3d at 564.

C. Tolling

Having established that *Sawyer* controls this case, application of the rule to the facts here is simple. There is no dispute that First Federal Action, filed just six weeks after the fax at issue was sent, was timely brought. *See* 28 U.S.C. § 1658(a).

---

[4] Defendants argue that GM Sign (more precisely, its lawyers) knew at the time the State Action was filed that the case was doomed to fail. R. 48 at 12. The Court would be hard-pressed to accept that argument given the nearly three years GM Sign spent litigating the matter and its vigorous opposition to summary judgment.

Under *American Pipe* and *Sawyer,* it tolled the statute of limitations as to all members of the class GM Sign purported to represent, including Practice Management.

In an attempt to circumvent the rule, Defendants argue that because the First Federal Action was brought against different Cirque entities than the ones named here, tolling is improper. R. 60 at 5 ("Groupe Cirque is simply not a party to the present litigation initiated by Practice Management, such that Plaintiff could not reasonably rely on a lawsuit filed against that non-party to toll the limitations period against the named Defendants, here.") The argument is disingenuous at best.

As set forth above, Defendants expended time and resources in discovery and a significant amount of motion practice in the State Action to convince the state court that the defendants in the First Federal Action were "privies" of the Defendants named here. Indeed, they submitted *four* motions (two motions to dismiss and two for summary judgment) arguing that the State Action should be barred as wholly duplicative of the First Federal Action. Defendants repeatedly set forth documentary and deposition evidence establishing that the various Cirque defendants were members of the same corporate family and that they shared the same managers, directors and officers. Defendants relied on this unity of identity to achieve dismissal of the State Action.

But Defendants ask this Court to accept precisely the opposite premise. In doing so, they direct the Court to case law holding that class action tolling does not

apply to defendants not named in an earlier suit. *Id.* (citing *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 567-68 (6th Cir. 2005)). In *Wyser-Pratte*, the Sixth Circuit considered whether *American Pipe* tolling applied to preserve claims against outside auditor Price Waterhouse Cooper ("PwC") that could have been brought (but were not) in an earlier class action against the Telxon Corporation and various affiliated entities. *Id.* In analyzing the issue, the Sixth Circuit explained, "The first principle of significance in this case is that the [earlier filed] class action must afford the defendant with adequate notice." *Id.* at 567. The Sixth Circuit ultimately concluded that because no class claims were asserted against PwC in the original class action, tolling did not apply to preserve Wyser-Pratte's now-stale claims against them. *Id.* at 568.

Of course, the present case is distinguishable from *Wyser-Pratte* in two ways. First, the parties against whom tolling is sought are the wholly-owned and jointly-controlled subsidiaries of their earlier-sued parent. Second, the TCPA claim in issue here is precisely the same claim that was alleged in the First Federal Action. Because of these distinctions, applying the same logic articulated in *Wyser-Pratte* necessarily leads to the opposite result. Here, the earlier-filed class action unquestionably put the Defendants on notice of Practice Management's TCPA claims. *See, e.g., Becks v. Emery-Richardson, Inc.*, Nos. 86-6866, 87-1544, 1990 WL 303548, at *12 (S.D. Fla. Dec. 21, 1990) (tolling is proper where a suit against AIG adequately put its subsidiaries on "constructive if not actual" notice of claims against it); *accord Ballard v. Tyco Intern. Ltd.*, No. 02-MD-1335, 2005 WL 928537,

13

at *3 (D.N.H. Apr. 22, 2005) (explaining in dicta that where a later-named defendant is a member of the originally-named defendant's corporate family, the *American Pipe* rule can properly apply upon a finding of adequate notice). Defendants conceded as much when they argued that dismissal in the First Federal Action had a *res judicata* effect on the State Action because the defendant entities were in privity. Accordingly, the First Federal Action tolled Practice Management's claims until April 4, 2012.[5]

**Conclusion**

For these reasons, Defendants' motion for summary judgment [46] is denied. The same reasoning applies equally to Defendants' motion to strike [50], which is also denied.

Rule 23(c)(1) provides that the court shall decide whether a class action may be maintained "as soon as practicable after the commencement of an action." Discovery in this matter has concluded. R. 36, R. 38. In the interest of bringing this long-pending dispute to resolution, the Court orders Plaintiff's class certification brief due December 8, 2015, Defendants' response due December 29, 2015, and Plaintiff's reply due January 12, 2016. This case is set for a status hearing on February 9, 2016.

---

[5] Because this Court finds that the First Federal Action tolled the statute of limitations such that the filing of the instant suit is timely, it need not decide whether the State Action also tolled the statute of limitations.

ENTERED:

*Thomas M Durkin*
Honorable Thomas M. Durkin
United States District Judge

Dated: November 12, 2015