UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRACTICE MANAGEMENT SUPPORT SERVICES, INC., an Illinois corporation, individually and as the representative of a class of similarly-situated persons,<br><br>PLAINTIFF,<br><br>v.<br><br>CIRQUE DU SOLEIL INC., CIRQUE DU SOLEIL (US), INC., AND JOHN DOES 1-10,<br><br>DEFENDANTS. | No. 14 C 2032<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

In this class action lawsuit, plaintiff Practice Management Support Services, Inc. challenges the alleged practice of defendants Cirque du Soleil, Inc., and Cirque du Soleil (US), Inc., of using a fax broadcasting service to advertise theatrical shows without providing sufficient instructions about how to opt out, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. On March 12, 2018, the Court granted in part Practice Management's motion for class certification. R. 162. A few months later, on June 11, 2018, the Supreme Court decided *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018), which resolved a circuit split regarding the application of the equitable tolling doctrine set forth in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), to untimely successive class actions. The *China Agritech* Court held "that *American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely

1

filed class action." 138 S. Ct. at 1806. In light of *China Agritech*, defendants have moved to decertify the class, arguing that Practice Management's class claims in this third successive class action are untimely. For the reasons explained below, the Court grants defendants' motion (R. 171) and decertifies the class. Because it is decertifying the class, the Court denies as moot Practice Management's motion for partial reconsideration of the Court's order granting class certification (R. 166).

**Background**

This is the third successive class action case filed against Cirque du Soleil entities by the same counsel (Anderson + Wanca) based on the same fax transactions. Because one of Practice Management's arguments against decertification raises the issue of its counsel's diligence, the Court recounts the relevant history of this sprawling litigation here, which began nearly three and a half years before this Court joined the bench.

On August 27, 2009, Anderson + Wanca filed a class action in federal court on behalf of a different named plaintiff (G.M. Sign) against Groupe Cirque du Soleil, Inc., Cirque du Soleil America, Inc., and unnamed Cirque entities. *G.M. Sign, Inc. v. Cirque du Soleil, Inc.*, 09 C 7692, Dkt. 1-1, Dkt. 30 (N.D. Ill.). On September 28, 2010, the court set a February 28, 2011 deadline to add additional parties and a March 18, 2011 class discovery cutoff. *Id.* Dkt. 35. On March 21, 2011, several weeks after the deadline for adding parties and three days after the close of fact discovery, G.M. Sign moved for an extension of time to complete discovery and to

2

reopen the period to add additional parties. *Id.* Dkt. 41. The court denied that motion on April 19, 2011. *Id.* Dkt. 48.

The day before the federal court's ruling, on April 18, 2011, Anderson + Wanca filed a second class action in state court against Cirque du Soleil, Inc. and Cirque du Soleil (US) (the same defendants named in this case), as well as unnamed Cirque entities. R. 47-7. Meanwhile, back in the federal case, G.M. Sign filed a motion in August 2011—five months after the close of discovery—to compel documents it claimed were relevant to establishing the certification requirements. *G.M. Sign*, 09 C 7692, Dkt. 68. The federal court denied that motion for, among other reasons, inexcusable delay. *Id.* Dkt. 86 at 4-5. Then, before the federal court ruled on G.M. Sign's perfunctory, four-page motion for class certification (*id.* Dkt. 83), G.M. Sign requested that the court dismiss the case without prejudice, in part because the court had "denied Plaintiff the ability to add any other of the 'Cirque' entities as additional defendants." *Id.* Dkt. 92 at 2. The court granted the motion to voluntarily dismiss, conditioned on G.M. Sign's payment of defendants' fees and costs. *Id.* Dkt. 94. On March 28, 2012, G.M. Sign moved to dismiss with prejudice instead of paying fees. *Id.* Dkt. 99. The court granted that motion and dismissed the case with prejudice on April 4, 2012. *Id.* at Dkt. 102.

Nearly two years later, on March 20, 2014, the state court granted summary judgment for defendants on *res judicata* grounds, finding "no genuine issue of material fact as to whether the defendants in the Lake County action[ ] are privies of the defendants in the federal court action . . . [for] the purposes of *res judicata*."

R. 47-16 at 20-21. The next day, on March 21, 2014, Anderson + Wanca filed this case in federal court, asserting the same TCPA claim based on the same fax against the same defendants, but this time naming Practice Management as class representative. R. 1.

On November 12, 2015, this Court denied defendants' motion for summary judgment based on the four-year statute of limitations. R. 63. The Court applied the Supreme Court's decision in *American Pipe*, 414 U.S. at 554, and the Seventh Circuit's opinion construing *American Pipe* in *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560 (7th Cir. 2011), to find that Practice Management's claims were tolled until the first federal class action was dismissed on April 4, 2012. R. 63 at 7-14. This meant that the filing of this case fell within the four-year statute of limitations window. *Id.*

Practice Management subsequently moved for class certification, and on March 12, 2018, this Court certified the following class:

> All persons who are residents of Illinois and all entities located in Illinois who were successfully sent a facsimile in Illinois containing the "Cirque du Soleil" trade name from January 29, 2009, through July 8, 2009, offering tickets for sale to the following performances: "Saltimbanco" at Rockford MetroCentre, Rockford, Illinois, opening February 25, 2009; and "A New Twist on Vaudeville" at Chicago Theatre, Chicago, Illinois, opening November 19, 2009.

R. 162 at 46. On March 20, 2018, this Court granted defendants' motion to stay the case pending the Supreme Court's decision in *China Agritech*. R. 165. The Supreme Court decided *China Agritech* on June 11, 2018 (138 S. Ct. 1800), and this Court

4

lifted the stay on June 15, 2018. R. 170. Defendants subsequently moved to decertify based on *China Agritech*. R. 171.

**Standard**

Under Federal Rule of Civil Procedure 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." After granting certification, the court "remains under a continuing obligation to review whether proceeding as a class action is appropriate." *Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 142 (N.D. Ill. 2010). When a party moves to decertify a class, "the party seeking class certification bears the burden of producing a record demonstrating the continued propriety of maintaining the class action." *Farmer v. DirectSat USA, LLC*, 2013 WL 2457956, at *2 (N.D. Ill. June 6, 2013).

**Discussion**

It is undisputed that Practice Management did not file this case within the applicable four-year statute of limitations set forth in 28 U.S.C. § 1658. Practice Management filed this case in 2014 based on faxes sent in 2009. R. 1; R. 68 ¶ 4. This means that Practice Management's claims are untimely unless a tolling doctrine applies.

This Court's November 2015 summary judgment opinion applied then-governing Seventh Circuit precedent in *Sawyer* to find *American Pipe* tolling applicable to successive class claims. *See* R. 63 at 7-9. *American Pipe* established that "the commencement of the original class suit tolls the running of the statute [of

5

limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." 414 U.S. at 553. The Seventh Circuit in *Saywer* expressly rejected a distinction based on whether "the second suits were brought as individual litigation" or "as a class action," finding that *American Pipe* tolling could apply in either situation. 642 F.3d at 563.

The Supreme Court in *China Agritech* abrogated this reasoning in *Sawyer* and similar cases by drawing a clear distinction between successive individual suits and successive class actions. The *China Agritech* Court explained that "*American Pipe* . . . addressed only putative class members who wish to sue individually after a class-certification denial." 138 S. Ct. at 1806. But *American Pipe* did not "so much as hint[ ] that tolling extends to otherwise time-barred class claims." *Id.*

The Court grounded this distinction in policy rationale. Equitable tolling is available for individual claims, the Court explained, "because economy of litigation favors delaying those claims until after a class-certification denial." *Id.* at 1806. "If certification is granted, those claims will proceed as a class and there [is] no need for the assertion of any claim individually." *Id.* Only "[i]f certification is denied" is it "necessary to pursue claims individually." *Id.* at 1807. But the "'efficiency and economy of litigation' that support tolling of individual claims do not support maintenance of untimely successive class actions; any additional *class* filings should be made early on, soon after the commencement of the first action seeking class certification." *Id.* at 1806 (quoting *American Pipe*, 414 U.S. at 553). That way, all

"would-be representatives . . . come forward" early on, and "the district court can select the best plaintiff with knowledge of the full array of potential class representatives and class counsel." *Id.* at 1807. The Court found support for this rationale in Fed. R. Civ. P. 23, which "evinces a preference for preclusion of untimely successive class actions by instructing that class certification should be resolved early on." *Id.*

The Court also identified "a [second] distinction between the individual-claim tolling established by *American Pipe* and tolling for successive class actions." *Id.* at 1809. Whereas "[t]he time to file individual actions once a class action ends is finite, extended only by the time the class suit was pending," "the time for filing successive class suits, if tolling were allowed, could be limitless." *Id.* "Endless tolling of a statute of limitations," the Court explained, "is not a result envisioned by *American Pipe*." *Id.* Based on these policy rationale, the *China Agritech* Court created a bright-line rule: "*American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action." *Id.* at 1806.

A straightforward application of *China Agritech* to this case compels the conclusion that Practice Management's untimely class claims cannot be tolled under *American Pipe*. "*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *Id.* at 1804. This case is a follow-on class action that was filed well after the four-year statute of limitations

7

expired. 28 U.S.C. § 1658. For this reason, the Court agrees with defendants that the class should be decertified and the class claims dismissed.

The Court is not persuaded by any of Practice Management's three arguments in opposition to decertification. *First*, Practice Management argues that *China Agritech* does not address situations like this one where class certification was never decided in a prior class action. Practice Management claims that this Court remains bound by *Sawyer*, which held that class claims are tolled where a plaintiff has been denied a "full and fair opportunity to litigate the question whether a class action is proper." 642 F.3d at 564.

It is true that the *China Agritech* Court framed the "question presented" early in its opinion as: "*Upon denial of class certification*, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations?" 138 S. Ct. at 1804 (emphasis added). But the Court purported to resolve a "division of authority among the Courts of Appeals" over a broader question: "whether otherwise-untimely successive class claims may be salvaged by *American Pipe* tolling." *Id.* at 1805. And the Supreme Court repeatedly stated its holding in clear terms that were in no way qualified based on how the prior class action lawsuit was resolved. *See id.* at 1804 ("*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations."); *id.* at 1806 ("We hold that *American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class

action"); *id.* at 1811 ("it is the rule we adopt today: Time to file a class action falls outside the bounds of *American Pipe*").

If the Supreme Court wanted to make its holding contingent on the reason why the earlier class action was dismissed, it would have done so. It was fully cognizant of the varying approaches taken by the courts of appeals, some of which had conditioned their holdings on how the prior class action was resolved. *See id.* at 1805-06 (collecting cases).[1]

Nor do the Supreme Court's two policy rationales supporting its distinction between successive individual and class lawsuits depend on class certification having been decided in the predecessor class action. The Court's desire to incentivize all "would-be representatives" to "come forward" early on so the "district court can select the best plaintiff with knowledge of the full array of potential class representatives" (*id.* at 1807) is not served if plaintiff's counsel can voluntarily dismiss a case at any time prior to a class certification decision and re-file with a new representative. This would allow the "time for filing successive class suits" to "be limitless"—the prospect that concerned the Supreme Court in its second policy

---

[1] As defendants note, the *China Agritech* Court cited approvingly the Eleventh Circuit's decision in *Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*, 795 F.3d 1324 (11th Cir. 2015). 138 S. Ct. at 1808. In *Ewing*, the prior class action lawsuit was resolved on a motion for summary judgment, and the "state court never ruled on the issue of class certification." 795 F.3d at 1325. The Eleventh Circuit determined that the lack of a prior class certification ruling was irrelevant, applying instead a bright-line rule like the one ultimately adopted by the Supreme Court in *China Agritech*. 795 F.3d at 1326-28. Like the Eleventh Circuit, the Court finds that this litigation "illustrates the wisdom of the rule against piggybacked class actions" regardless of why the prior cases were dismissed, where many years after the original lawsuit was filed, "class action issues are still being litigated." *Id.* at 1328.

9

rationale—so long as the prior class actions were all dismissed before a class certification decision. *Id.* at 1809.

If any doubt remained as to the scope of the eight-Justice majority's holding in *China Agritech*, Judge Sotomayor's concurrence makes it plain. Justice Sotomayor advocated for "a more tailored approach," such as holding that "tolling only becomes unavailable for future class claims where class certification is denied for a reason that bears on the suitability of the claims for class treatment." *Id.* at 1814 (Sotomayor, J., concurring). Instead, as Justice Sotomayor explained, the majority adopted "a blanket no-tolling-of-class-claims-ever rule." *Id.* Under that rule, Practice Management's claims were not tolled under *American Pipe*, regardless of how the prior class actions were resolved.

*Second*, Practice Management maintains that even if *China Agritech* applies to this case, this Court should not apply it retroactively because Practice Management acted in reliance on controlling Seventh Circuit precedent in *Sawyer* and other cases when failing to file its class claims sooner. But as the Supreme Court explained in *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993), "[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." *Id.* at 97.

Practice Management cites *Suesz v. Med-1 Sols., LLC*, 757 F.3d 636, 649 (7th Cir. 2014), for the proposition that in some circumstances, a Supreme Court ruling

10

may be given prospective-only effect. The *Suesz* court cited Justice Kennedy's concurrence in *Harper* for the proposition that "[t]he Supreme Court has . . . left itself some room to give its rulings in civil cases only prospective effect, at least 'to avoid injustice or hardship to civil litigants who have justifiably relied on prior law.'" *Id.* (quoting *Harper*, 509 U.S. at 110 (Kennedy, J., concurring in part and concurring in the judgment)). But as the Seventh Circuit in *Suesz* explained, a change in the law can be given prospective effect only if "the law had been so well settled before the ruling that it had been unquestionably prudent for the community to rely on the previous legal understanding." *Id.* at 650. This was not the case in *Suesz*; the Seventh Circuit declined to give prospective-only effect to its ruling in that case. *Id.* at 649-50.

It is also not the case here. *China Agritech* did not even change Supreme Court law. It did not overrule *American Pipe*. Rather, it "clarif[ied] *American Pipe*'s reach." 138 S. Ct. at 1810. Moreover, far from being "well settled" (*Suesz*, 757 F.3d at 650), the issue of whether *American Pipe* tolling applies to save untimely class—as opposed to individual—claims has been very much in dispute across the country for years. *See, e.g.*, *China Agritech*, 138 S. Ct. at 1805-06 (collecting cases); *see also Suesz*, 757 F.3d at 649-50 ("a prior decision of one intermediate appellate court does not create the degree of certainty concerning an issue of federal law that would justify reliance so complete as to justify applying a decision only prospectively in order to protect settled expectations"). It was not "unquestionably prudent" for Practice Management to rely on prior, evolving case law to wait until well after the

11

expiration of the statute of limitations to file its class claims. *See Suesz*, 757 F.3d at 650.

This conclusion is confirmed by the fact that the Supreme Court in *China Agritech* reversed and remanded for "proceedings consistent with [its] opinion," notwithstanding the fact that the plaintiffs had acted in reliance on prior, contradictory Ninth Circuit precedent. 138 S. Ct. at 1811; *see also* R. 173-1 (plaintiffs' opening brief before the Ninth Circuit in *China Agritech*). The Supreme Court has held that "it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 540 (1991). It would be error to refuse to apply *China Agritech* retroactively here.

*Third*, Practice Management suggests that a different tolling doctrine, such as fraudulent concealment or equitable estoppel, could be applied to toll its claims. But "equitable estoppel, also called fraudulent concealment, applies only when plaintiffs act with reasonable diligence to discover and file their claims." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 931 (7th Cir. 2015). The Court finds Practice Management's argument that it was diligent foreclosed by the reasoning in *China Agritech* itself. The *China Agritech* Court explained that "[a] would-be class representative who commences suit after expiration of the limitation period . . . can hardly qualify as diligent in asserting claims and pursuing relief. Her interest in representing the class as lead plaintiff,

12

therefore, would not be preserved by the prior plaintiff's timely filed class suit." 138 S. Ct. at 1808.

As this reasoning shows, Practice Management is not a diligent class representative. It asserts claims based on faxes sent in 2009, and it waited until 2014 to file this case. It had "every reason to file a class action early, and little reason to wait in the wings, giving another plaintiff first shot at representation." *Id.* This is especially true given that Practice Management has been represented by Anderson + Wanca in other lawsuits dating back to 2008. *See* R. 47-18; R. 47-19.

In support of its diligence argument, Practice Management points to this Court's previous finding that "the multiple suits [in this litigation] were in part . . . due to the array of corporate entities defendants have established . . . , which resulted in the current defendants not being sued in the first federal action." R. 162 at 22-23. As the Court further explained, however, "the multiple suits were in part putative class counsel's doing." *Id.* at 22. Practice Management does not claim that fraudulent concealment on the part of defendants was what caused Anderson + Wanca to fail to miss both the discovery deadline to gather evidence needed to support class certification and the deadline for adding new parties in the first federal class action. The procedural history recited above shows that Anderson + Wanca was not diligent in the first federal class action, and then sought to rectify the situation by filing successive class actions. The Supreme Court's decision in *China Agritech* deliberately aims to eradicate this type of conduct. Because of

Practice Management and its counsel's lack of diligence, the Court finds that Practice Management cannot benefit from any alternative tolling doctrine.

\* \* \*

Allowing the same counsel to litigate three successive class actions over nine years is exactly the abuse of tolling that *China Agritech* seeks to prevent. Just like the third successive class action that the Supreme Court found untimely in *China Agritech*, *id.* at 1805-09, Practice Management's class claims in this third successive action are untimely. As a result, the class must be decertified, and the class claims dismissed.

## Conclusion

For the foregoing reasons, the Court grants defendants' motion to decertify the class and dismisses the class claims as untimely based on the Supreme Court's recent decision in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018) (R. 171). The Court denies as moot Practice Management's motion for partial reconsideration of the Court's order granting class certification (R. 166). Practice Management's individual claims survive.

ENTERED:

*Thomas M Durkin*
Honorable Thomas M. Durkin
United States District Judge

Dated: August 2, 2018